LOUISE THOMSEN v. UNION LOAN & FINANCE COMPANY.[1]

October 16, 1936.

No. 30,906.

[1]Reported in 269 N. W. 109.

138

 

*John T. Rohwedder, Harold C. Bellew,* and *Mark J. McCabe,* for appellant.

*Kueffner & Kueffner,* for respondent.

HOLT, JUSTICE.

Plaintiff purchased nine shares of defendant's preferred stock in July, 1928, and ten shares of the same stock in January, 1929, upon the agreement, as she claims, that at any time thereafter defendant would repurchase the same at par, *viz.:* $50 a share on her demand. That plaintiff in October, 1931, tendered back such stock to defendant and demanded her money. She sued for breach and brought the stock into court for defendant's use. She recovered a verdict. Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

There are many assignments of error, but they may all be considered under two propositions: (1) Is defendant entitled to judgment notwithstanding the verdict, and (2) did the court err in admitting evidence of other sales of defendant's stock?

The testimony of plaintiff, her sister, and the two agents of defendant who concededly were authorized to sell the stock was in substance that on each occasion the purchase of the shares of stock was with the provision or upon the condition that at any time on plaintiff's demand defendant would pay her the par value of the shares, *viz.:* $50 a share; that in October, 1931, she took the shares she had purchased to defendant's office, demanded her money, and the president of defendant then promised to give it, but later returned the stock to her by mail with a refusal to pay. The evidence shows that in these two transactions neither the plaintiff nor defendant's sales agents considered that the latter had authority to include in the same an agreement to repurchase until such authority was expressly given them by defendant's president. The agents testified to having obtained such authority. The president denied so doing, but the jury settled the conflict in favor of plain-

tiff. So plaintiff's money in these two transactions was received by the officials of defendant with knowledge of the terms and conditions with regard to repurchase on demand. But, even so, defendant's contention is that the provision of repurchase of its stock is so unusual that neither its president nor any other official has implied authority to authorize or ratify a sale of its stock having such a provision. On this proposition defendant cites and relies upon Eberlein v. Stockyards M. & T. Co. 164 Minn. 323, 204 N. W. 961, where it was held that an officer of a trust company did not have implied authority to annex to the sale of a bond a provision of repurchase. In the case at bar there was no by-law or action of the defendant's board of directors shown giving its president authority to insert a provision of repurchase in making sales of its stock. Assuming, for the purpose of this decision, that the president of this corporation had no implied authority so to do, we nevertheless think that the learned trial judge was justified in sustaining the verdict. The judgment in the Eberlein case was reversed not only because the plaintiff stood on the contract, but also for error in the reception of evidence with respect to whether the sale contained a provision of repurchase. We think the facts here found by the verdict would authorize an amendment of the complaint, were it deemed necessary, so as to authorize a recovery under Seifert v. Union B. & M. Mfg. Co. 191 Minn. 362, 254 N. W. 273, and Gasser v. Great Northern Ins. Co. 145 Minn. 205, 176 N. W. 484. Plaintiff's money was accepted by an official duly authorized to so do with knowledge, as embodied in the verdict, of the repurchase provision of the sale. Defendant cannot avail itself of one part of the deal and repudiate another part thereof. On the assumption that defendant's president lacked power to authorize or ratify a sale of the stock with a repurchase provision included, there was no assent to any sale at all. In the Seifert case it was said [191 Minn. 364]:

"Defendant cannot affirm in part and repudiate in part. Failure of the agreement to bind defendant according to its terms makes a clear case of no contract. Plaintiff did not get what he paid for; there was failure of consideration for his payment, and so he is

entitled to recover it in order to prevent the unjust enrichment of defendant which otherwise would result."

The only other question to be considered is whether any error was committed with respect to the reception or exclusion of evidence bearing on the vital issue of the provision of repurchase being a part of the sales. The errors assigned do not go to any specific question, but to the reception of the testimony of certain named witnesses. The substance of the testimony they gave was of other sales of defendant's stock wherein there were similar provisions to the ones at bar for repurchase authorized or ratified by the president or manager of defendant. Where the issue was whether or not such provision, as plaintiff claims, was in the sales contract to the knowledge of the officials of defendant who received the money on such sale, testimony was relevant and material to establish plaintiff's contention and to refute defendant's with respect to the repurchase clause being part of the sale authorized or ratified by the president. Defendant claims these witnesses testified to *res inter alios acta* which were immaterial. 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 3254, states:

"As there is no general rule excluding evidence of transactions between others the use of this phrase is misleading, and is happily obsolescent."

It appears to us that here, when it developed that there was to be a sharp conflict on the proposition that the president of defendant authorized these stock sales with a repurchase provision, it was relevant and material to show that about the same time upon other sales of the same kind of stock he authorized like repurchase provisions. The trial court has a wide discretion in receiving evidence on collateral matters, and it is only for abuse of such discretion to the prejudice of an appellant that this court should order a new trial. Baltrusch v. Braulick, 183 Minn. 470, 236 N. W. 924. We think there was no abuse of discretion in receiving the testimony of the witnesses here objected to. To have granted a directed verdict or judgment notwithstanding the verdict upon the evidence received would have been error, for such evidence clearly shows that

plaintiff is entitled to recover the money she parted with for a contract which defendant repudiates. And we regard the evidence received admissible within proper judicial discretion.

The order is affirmed.

[1]Reported in 269 N. W. 111.