# MELVIN WARREN v. MERCHANTS INVESTMENT & LOAN CORPORATION OF ST. PAUL.[1]

May 19, 1944.

No. 33,746.

*Irving Gotlieb, Jesse B. Calmenson,* and *Louis Lerman,* for appellant.

*Stacker & Stacker* and *George G. Chapin,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to recover the par value of 110 shares of preferred stock issued by defendant to plaintiff, based on an agreement to pay on demand the full par value thereof. Plaintiff had a verdict. Defendant's alternative motion for judgment or a new trial was denied, and it appeals.

The evidence would justify a jury in finding that plaintiff's stock was acquired for him by his mother between March 1, 1936, and the same date in 1939, while he was a minor. During this period, seven certificates of this type of stock were acquired by his mother, all "in trust for Melvin Warren." He arrived at his majority Sep-

[1]Reported in 14 N. W. (2d) 450.

tember 1, 1940. In December, the seven certificates theretofore issued "in trust" for him were exchanged for the one upon which this cause is founded, the new certificate reciting its effective date of issue "as of March 1, 1940." When the exchange took place, defendant's treasurer, Meyer H. Ravits, reassured both plaintiff and his mother that the money represented by the certificate would be paid on demand. These representations had been made when the original certificates were acquired. Louis Finkelstein, a stockholder and a member of defendant's board of directors, had so represented when these transactions took place. Plaintiff's mother, at Finkelstein's solicitation, purchased some of this kind of shares as early as June 1934. From time to time she loaned money to defendant, accepting demand notes. These were in substantial sums, varying from $2,000 to $6,300. She was always assured when buying stock that it was just the same as the note transactions and that she would get her money on demand.

All the money went into defendant's treasury, and Ravits, as its fiscal officer, not only received the money but also issued the certificates; in fact, he so admits at page 57 of the record.

During the course of the trial the court asked counsel:

"As I understand the stipulation, the defendant concedes that the plaintiff is the owner of the stock at the present time, is that correct?

"Mr. Gotlieb: That is right; I see no point in any dispute.

\* \* \* \* \*

"Mr. Chapin: Will you stipulate that Melvin Warren stands in the shoes of his mother, however she made this stock and any agreement or representation made to her adheres [sic] to the benefit of Melvin and he can take advantage of them if there were any such?

"Mr. Gotlieb: Absolutely, we will be bound by all of her obligations and everything else.

"Mr. Chapin: Very well."

The court submitted to the jury as the only question to be decided by it whether "defendant, through Mr. Ravits and Mr. Finkelstein, agreed that the corporation would repurchase the stock at par on

demand." At the end of the charge the court asked counsel whether there were "any exceptions." Counsel for both parties answered in the negative. There were no requests for instructions, and no error was assigned covering the same in defendant's motion for new trial.

Assigned as error here is the claim (1) that the court erred in denying defendant's motion for judgment because "it clearly appears from the whole evidence that the cause of action sought to be established does not, in point of substance, constitute a legal cause of action"; and (2), as its basis for a new trial, that "the verdict is manifestly contrary to the evidence as a whole, and is contrary to law."

The first assignment may be by-passed, since we conclude that the evidence sustains the verdict. The facts have been recited and have been determined by the constitutional triers of fact.

In its essential features, the facts here are substantially the same as those found determinative of decision in Thomsen v. Union L. & F. Co. 198 Minn. 137, 139, 269 N. W. 109, 110, where our holding and the reason for it were stated as follows:

"* * * Plaintiff's money was accepted by an official duly authorized to so do with knowledge, as embodied in the verdict, of the repurchase provision of the sale. Defendant cannot avail itself of one part of the deal and repudiate another part thereof."

And so here, defendant cannot deny its treasurer's authority to accept plaintiff's money, which was traced into its treasury. This being so, he, in behalf of the corporation, ratified the stock repurchase provision or there was no assent to any sale at all. In that event (198 Minn. 139, 269 N. W. 110), "plaintiff did not get what he paid for; there was failure of consideration for his payment, and so he is entitled to recover it in order to prevent the unjust enrichment of defendant which otherwise would result."

Able and experienced counsel should know that this court is one of review, not the trier of facts. It is hard to understand why cases of this sort are brought before us. The spirit of conflict should not be encouraged in this manner, since the inevitable re-

sult of it only adds to a client's expense and justifies the criticism made by laymen as to court expenses and the "law's delay." Attorneys should know that when the evidence permits a finding either way, absent reversible error, the verdict must stand.

Order affirmed.